UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                    :
21st MORTGAGE CORPORATION,                          :
                                                    :
            Plaintiff,                              :   Civil Action No.: 17-03456 (FLW)
    v.                                              :
                                                    :   **OPINION**
CHICAGO TITLE INSURANCE                             :
COMPANY, *et. al*.                                  :
                                                    :
            Defendants.                             :
_____                           :

**WOLFSON, United States District Judge**:

This matter comes before the Court on Defendant Chicago Title Insurance Company's ("Defendant" or "Chicago Title") Motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), on Plaintiff 21st Mortgage Corporation's ("Plaintiff" or "21st Mortgage") claims for declaratory relief and negligence against Defendant, on the basis that these claims are time-barred. For the reasons set forth below, Defendant's Motion is **GRANTED**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff 21st Mortgage and Defendant Chicago Title are corporations that have principle places of business in Tennessee and Florida, respectively. Second Amended Complaint ("SAC"), ¶¶ 1-2. Defendant Closers on Call, LLC ("COC") (COC with Chicago Title together, "Defendants") is a limited liability company which allegedly served as an authorized agent for Chicago Title in 2008. *Id*. ¶ 3.

In 2008, Wells Fargo, N.A. ("Wells Fargo") loaned $279,000.00 to Carlos Merchan ("Merchan"), for purchase of the real property located at 1 Longfield Road, New Brunswick, New Jersey ("Property") from Richard Adams and Vivian Adams ("Sellers"), *Id*. ¶¶ 5-6.

1

Merchan, in exchange, provided Wells Fargo with a mortgage on the Property ("Merchan Mortgage"), which transaction was recorded with the Middlesex County Clerk on November 10, 2008. *Id.* ¶ 6.

Wells Fargo purportedly obtained title insurance from Chicago Title's alleged former agent, COC. *Id.* ¶¶ 7-8. In connection therewith, Wells Fargo provided COC with Supplemental Loan Closing Instructions, requiring the "cancellation or disposition" of two prior mortgages encumbering the Property, for the purpose of ensuring that the Wells Fargo Mortgage was a "valid first lien." *Id.* ¶¶ 10, 12. Specifically, the two prior mortgages included: (1) a mortgage from the Sellers to Central Jersey Federal Credit Union ("Central Jersey"), dated October 26, 2005, recorded on November 23, 2005 ("Central Jersey Mortgage"); and (2) a Mortgage from the Sellers to Mortgage Electronic Registrations Systems, Inc. as Nominee for EquiFirst Corporation ("Equifirst"), dated April 26, 2006, which was recorded on May 24, 2006 ("Equifirst Mortgage"). *Id.* ¶ 10. COC ultimately prepared a Settlement Statement, dated August 14, 2008, indicating that COC complied with the Supplemental Loan Instructions by paying off the Central Jersey and Equifirst Mortgages and, additionally, issued a title insurance commitment and closing service letter on behalf of Chicago Title, with a Loan Policy in the amount of $279,000. *Id.* ¶¶ 9, 12-16. However, notwithstanding COC's allegedly false representations, the Wells Fargo Mortgage did not become the first priority lien. *Id.* ¶ 15.

On November 1, 2008, the Merchan Mortgage allegedly entered default. *Id.* ¶ 16. On February 25, 2009, Wells Fargo filed a foreclosure action in the Superior Court of New Jersey, Middlesex County, Chancery Division, following which Final Judgment was entered in favor of Wells Fargo on July 9, 2010. *Id.* ¶ 16. On September 9, 2016, Wells Fargo assigned the Final Judgment to 21st Mortgage. *Id.* ¶ 18.

Despite COC's assurances, Central Jersey also asserted an interest in the Property and filed a foreclosure action. *Id*. ¶ 19. Wells Fargo, in turn, submitted a notice of claim for title insurance coverage to Chicago Title; however, in a letter, dated March 17, 2010, Chicago Title denied[1] Wells Fargo's request, on the basis that COC was not authorized to provide Wells Fargo with the 2008 title insurance policy:

> Upon further investigation, the Company has discovered that the relationship between Closers on Call and the Company had been terminated on or about June 21, 2008. A final audit of all outstanding transactions of this agent was completed on or about July 25, 2008, and policies were issued on these transactions. Since the transaction closed on August 14, 2008, after the final audit, Closers on Call was not an agent of the Company at the time of closing, and therefore, lacked the authority to issue a policy. Accordingly, the Company respectfully denies liability for this matter.

*Id*. ¶ 20; Answer, Ex. 4. Indeed, there is no dispute that Wells Fargo was on notice that Chicago Title disclaimed coverage based on the fact that COC was not its agent.

Likewise, on November 15, 2015, Equifirst asserted an interest in the Property and filed an action to quiet title, subsequent to which 21st Mortgage, as an assignee of Wells Fargo, submitted a second notice of claim for title insurance coverage on October 13, 2016.[2] *Id*. ¶¶ 22-23, 25. The notice of claim included the results of a Foreclosure Search Report, indicating that Equifirst obtained a Sheriff's Deed for the Property, dated May 13, 2009, recorded on July 24,

---

[1] The Court notes that, although Chicago Title denied this request for coverage, the Central Jersey foreclosure action "was discharged approximately two weeks prior to Wells Fargo making the initial notice of claim." Plaintiff's Brief in Opposition to Motion for Judgment on the Pleadings ("Pl.'s Brief"), at 5. Therefore, Wells Fargo's prior request for coverage in connection with the Central Jersey Mortgage foreclosure action was moot.

[2] Specifically, the purpose of an action to quiet title is as follows: "to put within the power of a person, who is in peaceable possession of realty as an owner, a means to compel any other person, who asserts a hostile right or claim, or who is reputed to hold such a right or claim, to come forward and either disclaim or show his right or claim, and submit it to judicial determination." *Brookdale Park Homes, Inc. v. Bridgewater*, 115 N.J. Super. 489, 496 (Ch. Div. 1971) (citations omitted).

2009. *Id.* ¶¶ 23-24. However, Chicago Title denied the second notice of claim, for the same reason which Chicago Title denied Wells Fargo's first request for title insurance coverage—COC was not Chicago Title's authorized agent at the relevant time. *Id.* ¶ 26.

On April 5, 2017, 21st Mortgage brought this action against Defendants, arising from Chicago Title's denial of Plaintiff's second request for title insurance coverage in connection with the Equifirst Mortgage. On September 19, 2017, 21st Mortgage filed an Amended Complaint, wherein it seeks declaratory relief in Count I, regarding its rights and Chicago Title's obligations pursuant to the disputed title policy. *Id.* ¶¶ 27-35. The Amended Complaint also asserts the following claims against Defendants: negligence (Count II); fraud (Count III); consumer fraud (Count IV); conversion (Count V); and an intended beneficiary claim (Count VI). *Id.* ¶¶ 36-74.[3]

Currently, Chicago Title moves for judgment on the pleadings, arguing that Plaintiff's request for declaratory relief and claim of negligence are barred by their respective statute of limitations. Plaintiff opposes the motion.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial." Fed. R. Civ. P. 12(c). The applicable standard on a motion for judgment on the pleadings is similar to that applied on a motion to dismiss pursuant to Rule 12(b)(6). *Spruill v. Gillis*, 372 F.3d 218, 223

---

[3] Although this does not impact the outcome of this motion, for purposes of completeness, the Court notes that Chicago Title is alleged to have mistakenly issued a title insurance policy in connection with the Merchan transaction in 2016—more than six years after the denial of Wells Fargo's request for title insurance coverage. That policy forms the basis of Chicago Title's Counterclaim, pursuant to which Defendant seeks to rescind the policy on the basis of its alleged unilateral mistake.

n.2 (3d Cir. 2004). When reviewing a motion made pursuant to Rule 12(c), a court must take all allegations in the relevant pleading as true, viewed in the light most favorable to the non-moving party. *Gomez v. Toledo*, 446 U.S. 635, 636 (1980); *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004). All reasonable inferences must be made in the non-moving party's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). "The motion should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Mele*, 359 F.3d at 253 (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)). Accordingly, in order to survive a motion for judgment on the pleadings, the non-moving party's pleading must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This standard, like a motion to dismiss, requires the non-moving party to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft*, 556 U.S. at 678.

    **B.    ANALYSIS**

        **i.    Declaratory Relief**

As a threshold issue, the Court notes that the Declaratory Judgment Act (the "Act"), N.J.S.A. 2A:16-50, *et seq.*, as alleged in Count I of Plaintiff's Second Amended Complaint, "does not contain a statute of limitations[.]" *Ballantyne House Associates v. City of Newark*, 269 N.J. Super. 322, 330 (App. Div. 1993). Notwithstanding its absence, for the purpose of determining timeliness, the limitations period which applies to the underlying substantive claim that forms the basis of the declaratory judgment request governs. *See, e.g.*, *id.* (applying the statute of limitations period which governs challenges to the constitutionality of municipal ordinances, to the plaintiff's request for declaratory relief). Indeed, a contrary result would allow

5

a party to circumvent the statute of limitations requirement by merely "[d]raping [its] claim in the raiment of the Declaratory Judgment Act." *Gilbert v. Cambridge*, 932 F.2d 51, 58 (1st Cir. 1991). The parties do not dispute this fact. Therefore, based on these principles, the Court shall look to the substance of the allegations in support of Plaintiff's declaratory judgment request to determine the appropriate statute of limitations.

> Specifically, in the Second Amended Complaint, Plaintiff alleges:
>
> Chicago Title breached the terms of the contract, the CSL and Title Policy, by the failure of the Settlement Agent, COC, to comply with the closing instructions requiring that the Merchan Mortgage be a valid first lien. . . . Chicago Title further breached the terms of the contract, the CSL and Title Policy, by the denial of title insurance coverage on February 6, 2017.

SAC ¶¶, 32-33. Accordingly, Plaintiff's claim for declaratory relief sounds in contract, because it arises from the alleged breach of the pertinent terms and provisions of the title insurance policy. Thus, because a breach of contract claim is subject to a six-year limitations period under New Jersey law, Plaintiff may only proceed with its declaratory judgment claim if it was filed within six years from the date that the contractual claim "accrued." *Crest-Foam Corp. v. Aetna Ins. Co.*, 320 N.J. Super. 509, 517 (App. Div. 1999) (citing *Walkowitz v. Royal Globe Ins. Co.*, 149 N.J. Super. 442, 448 (App. Div. 1977)). That requirement is not disputed here; however, the parties disagree on the date of accrual for the purpose of determining whether the statute of limitations on Plaintiff's claim has run.

In that regard, Defendant contends that Plaintiff's breach of contract claim accrued on March 17, 2010, the date on which Defendant denied Wells Fargo's request for title insurance coverage and disavowed any obligation under the policy. Defendant's Brief in Support of Judgment on the Pleadings, ("Def.'s Brief"), at 7-10. Conversely, Plaintiff argues that its breach of contract claim did not accrue until February 6, 2017, when Defendant denied Plaintiff's title

insurance claim with respect to the Equifirst Mortgage. Plaintiff's Opposition to Judgment on the Pleadings ("Pl.'s Opp."), at 7-9. Indeed, Plaintiff contends that Defendant's prior denial cannot commence the statute of limitations, because it solely pertained to a matter which does not form the basis of this action, *i.e.*, the Central Jersey Mortgage. The Court finds Plaintiff's position unsupported by law.

As stated, "[i]n New Jersey, causes of action based on contractual claims must be brought within six years 'after the cause of any such action shall have accrued.'" *Crest-Foam Corp.*, 320 N.J. Super. at 517 (quoting N.J.S.A. 2A:14-1). "[T]he general rule is that the statute of limitations applicable to contracts governs insurance actions as well." *Id.* citing (*Breen v. New Jersey Mfrs. Indemn. Ins. Co.*, 105 N.J. Super. 302, 309 (Law Div.1969)). Thus, in the absence of a provision "'in the insurance policy or an express statute to the contrary, the statute of limitations applicable to a suit on a policy of insurance" as mandated by N.J.S.A. 2A:14-1 is six years. *Id.* (quoting *Walkowitz* v. *Royal Globe Ins. Co.*, 149 N.J. Super. 442, 448 (App. Div. 1977).

The Supreme Court of New Jersey has provided as follows: "[f]or purposes of determining when a cause of action accrues so that the applicable period of limitation commences to run, the relevant question is when did the party seeking to bring the action have an enforceable right." *Metromedia Co. v. Hartz Mountain Assocs.*, 139 N.J. 532, 535 (1995) (quoting *Andreaggi v. Relis*, 171 N.J. Super. 203, 235-36 (Ch. Div.1979)). Moreover, in regard to an action for breach of contract, "the date of accrual of an enforceable right is tied to the date that the defendant breached the contract." *Belmont Condo. Ass'n v. Arrowpoint Capital Corp.*, No. 11-2900, 2011 U.S. Dist. LEXIS 146451, at *12 (D.N.J. Dec. 20, 2011); *see also Peck v. Donovan*, No. 7-5500, 2009 U.S. Dist. LEXIS 26988, at *5 (D.N.J. March 31, 2009); *Strauss v.*

7

*Turtletaub*, No. 04-5128, 2006 U.S. Dist. LEXIS 1323, at *10 (D.N.J. Jan.13, 2006); *Neuhart v. Trust Co. of New Jersey*, No. A-5856-06T2, 2008 N.J. Super. Unpub. LEXIS 385, at *5 (App. Div. June 17, 2008).

Here, Plaintiff's breach of contract claim accrued no later than March 17, 2010, the date on which Defendant denied Wells Fargo's request for title insurance coverage under the policy. I so conclude because Wells Fargo contracted with COC to elevate its Mortgage to a first priority lien, and that transaction required COC to "pay off" the additional lienholders, including Central Jersey and Equifirst. Moreover, COC, acting as a purported agent for Chicago Title, issued a title insurance policy pursuant to which it obligated Chicago Title to provide coverage in the event *any* lienholder asserted an interest in the Property—regardless of whether it was Central Jersey or Equifirst. However, notwithstanding COC's assurances and the policy, Central Jersey ultimately asserted an interest in the Property, which prompted Wells Fargo to file a claim with Chicago Title under the policy for title insurance coverage. Chicago Title denied the request for coverage and provided the following explanation:

> Upon further investigation, the Company has discovered that the relationship between Closers on Call and the Company had been terminated on or about June 21, 2008. A final audit of all outstanding transactions of this agent was completed on or about July 25, 2008, and policies were issued on these transactions. Since this transaction closed on August 14, 2008, after the final audit, Closers on Call was not an agent of the Company at the time of closing, and therefore, lacked the authority to issue a policy.

Answer, Ex. 4. As such, to the extent that a contractual obligation to provide coverage existed, the failure to do so in connection with Wells Fargo's request constituted a clear breach of the agreement's terms and provisions, *i.e.*, to elevate Wells Fargo's Mortgage as first priority and provide insurance coverage. Contrary to Plaintiff's argument, the fact that Chicago Title's denial of Wells Fargo's claim in relation to the claims by Central Jersey is of no significance for

purposes of determining accrual, because that in of itself is a breach of the policy. Moreover, the denial letter clearly made known that any requests for title insurance coverage would be denied because COC was not Chicago Title's agent at the time the policy issued. Thus, the breach of contract claim accrued on March 17, 2010, the date on which Defendant notified Wells Fargo of its alleged uninsured status, and having done so, Plaintiff was required to dispute Defendant's position as to the policy and enforce its alleged contractual rights within six years of that date—not delay this action until a senior lienholder of which it was aware asserted a property interest. Consequently, because Plaintiff waited until April 5, 2017 to initiate this action, which date falls outside of the applicable limitations period, the Court finds that Count I of the Second Amended Complaint is time-barred.[4]

### ii. Negligence

Plaintiff also brings a negligence claim against Defendant. Specifically, Plaintiff alleges that Chicago Title negligently audited COC's "outstanding transactions" on July 25, 2008, approximately one month after it was terminated as an authorized agent, because Chicago Title failed to "locate the title commitment and [closing service letter which COC previously] issued to Wells Fargo relating to the Merchan Mortgage." SAC ¶¶ 38, 41. Plaintiff further alleges that Chicago Title breached its duty "to assure that COC would not issue title commitments and closing service letters after COC was allegedly terminated as an authorized agent," and, in that same vein, Defendant acted "negligently [by] fail[ing] to provide notice to Wells Fargo that

---

[4] Notwithstanding its acknowledgement of the EquiFirst Mortgage, Plaintiff contends that the title commitment which COC issued on July 14, 2008, failed to "identify that the Equifirst Mortgage was in foreclosure." Pl.'s Opp., at 11. To the extent that Plaintiff argues that the statute of limitations could not have commenced until it was informed of that fact, the Court disagrees. As reasoned, Wells Fargo was informed that Chicago Title disavowed any policy issued on its behalf by COC. That event triggered the breach of contract claim, not when Plaintiff or Wells Fargo became aware of a foreclosure action brought by Equifirst.

9

Chicago Title terminated COC as an authorized agent," prior to the closing on the Merchan Mortgage on August 14, 2008. *Id.* ¶¶, 40, 42-43. However, the Court finds that Plaintiff's negligence claim against Defendant is time-barred.

In New Jersey, negligence claims are governed by N.J.S.A. § 2A:14-2. Subsection (a) of that statute provides that "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall be accrued." N.J.S.A. § 2A:14-2(a). As such, "[a]ll negligence actions fall under the two-year statute of limitations period of [N.J.S.A.] § 2A:14-2(a)." *Deutsche Bank Nat'l Trust Co. v. Lacapria*, No. 08-2174, 2010 U.S. Dist. LEXIS 17998, at *16 (D.N.J. March 1, 2010) (citing *Leake v. Bullock*, 104 N.J. Super. 309, 311-12, (App. Div. 1969)).[5]

Plaintiff argues that its negligence claim is timely based upon an application of the discovery rule. Pl.'s Brief, 10-11. Generally, "the statute of limitations for a cause of action is triggered from the moment of the wrong; however, New Jersey's discovery rule delays the accrual of a cause of action until the party 'learns, or reasonably should learn the existence of a state of facts which may equate in law with the cause of action.'" *Id*. (quoting *Fishbein Family P'ship v. PPG Indus.*, 307 Fed. Appx. 624, 626-27 (3d Cir. 2009)). "In the applicable cases, the discovery rule provides that a 'cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" *Id*. (quoting *Lopez v. Swyer*, 62 N.J. 267, 272 (1973)). "The purpose of this rule is not to permit every belated discovery to overcome the statute of limitations, but to limit its application to parties who could not have reasonably

---

[5] Plaintiff does not dispute that its negligence claim is subject to a two-year statute of limitations pursuant to New Jersey law.

discovered they had a basis for an actionable claim." *Id*. (citing *Burd v. New Jersey Tel. Co.*, 76 N.J. 284, 291 (1978)).

The Court finds that the discovery rule is inapplicable here, because Wells Fargo was aware of the "state of facts" that form the basis for the negligence claim in as early as March 2010. *Deutsche Bank Nat'l Trust Co.*, No. 08-2174, 2010 U.S. Dist. LEXIS 17998, at *16 (citation omitted). As discussed, in that month, Chicago Title provided Wells Fargo with a denial letter, stating:

> Upon further investigation, the Company has discovered that the relationship between Closers on Call and the Company had been terminated on or about June 21, 2008. A final audit of all outstanding transactions of this agent was completed on or about July 25, 2008, and policies were issued on these transactions. Since this transaction closed on August 14, 2008, after the final audit, Closers on Call was not an agent of the Company at the time of closing, and therefore, lacked the authority to issue a policy.

Answer, Ex. 4. Accordingly, the denial letter explicitly stated that Chicago Title terminated COC as an authorized agent on June 21, 2008, and that Chicago Title completed an audit of COC's outstanding transactions by July 25, 2008, prior to the date upon which the Merchan transaction closed. These facts, I conclude, are sufficient to find that Plaintiff had "a basis for an actionable [negligence] claim" against Chicago Title. Indeed, Plaintiff's central allegations of its negligence claim mostly dispute the facts set forth in Chicago Title's March 2010 denial letter. Therefore, Plaintiff's negligence claim accrued then; however, because Plaintiff waited until April 5, 2017 before filing the instant action, significantly later than the applicable two-year limitations period, the negligence is time-barred.[6]

---

[6] Although the issue need not be reached, the Court, nonetheless, questions whether Chicago Title had a duty to monitor COC's conduct, even after Chicago Title terminated COC as an authorized agent of the company.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for judgment on the pleadings is **GRANTED.**

Dated: December 21, 2018

/s/ Freda L. Wolfson  
Freda L. Wolfson  
United States District Judge